UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM S. PATTISON,

                Petitioner,                Case Number 10-12240
                                              Honorable David M. Lawson

v.

KENNETH MCKEE,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Michigan prisoner Williams S. Pattison filed a habeas petition under 28 U.S.C. § 2254 challenging his convictions for four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.52b(1)(b), and one count of pandering, Mich. Comp. Laws § 750.455. The petitioner seeks habeas relief on these grounds: prosecutorial misconduct, ineffective assistance of counsel, and disproportionate sentence. The respondent has filed an answer arguing that the petitioner's first claim is procedurally defaulted and all of the claims are meritless. The Court finds that the petitioner's claims lack merit. Therefore, the Court will deny the petition.

I.

The petitioner's convictions arise from allegations that he sexually assaulted his daughter, B.P., and that he encouraged her to prostitute herself, helped her advertise her prostitution services on the Internet, and took the money she earned as a prostitute. B.P. testified that her father started molesting her when she was very young, perhaps somewhere between three and five years old, by digitally penetrating her vagina. At that time, she lived with her mother and visited her father on weekends. When she was 12 or 13 years old, she went to live with her father because he lived in a better school district. She testified that the petitioner first had intercourse with her when she was

12. He came home from his work as a prison sergeant wearing his uniform. The petitioner forced her to have intercourse and told her no one would believe her if she complained. He held up his badge and asked "who are you going to tell[?] [T]he police[?] I am the police." Tr., Jan. 10, 2008, at 172.

B.P. testified that she lived with her father for two years. During that time period, the petitioner had intercourse with B.P. and his other daughter, A.P., over 20 times. B.P., who had a child of her own, began using drugs when she was 16. B.P.'s mother reported B.P.'s drug use to child protective services. As a result, B.P.'s daughter was taken from her and placed with the petitioner and his ex-wife Denise Pattison.

B.P. entered a drug rehabilitation program. She advised a counselor there and child protective services that her father had molested her, hoping that her child would be removed from the petitioner's home. A couple of weeks later, Denise Pattison told B.P. she would never be able to see her daughter if she did not recant her allegations against the petitioner. B.P. recanted and was then allowed by the petitioner and Denise to see her daughter. The petitioner encouraged B.P. to work as a prostitute and advertise her services on Craigslist. The petitioner and his niece took photographs of B.P. to post on Craigslist. The petitioner visited B.P. every day to collect any earnings she made as a prostitute. He required that she give him her earnings before she was permitted to see her daughter.

Several other girls testified that the petitioner sexually assaulted them. Jennifer V. testified that when she was 14 years old, she slept at her friend B.P.'s house. Jennifer testified that the petitioner asked whether she was a virgin. When she said she was, he exposed himself to her. Later

-2-

that night, the petitioner awakened her while she slept in B.P.'s room.  He forced her to have intercourse.

Kimberly M. testified that she was friends with B.P. in 1995.  Kimberly, then 15 years old, went to B.P.'s house after school one day in the fall.  Kimberly testified that the petitioner groped and fondled her.  While driving her home, he also kissed and fondled her.  Before she exited his car, the petitioner told Kimberly that no one would believe her if she told anyone because he was a security officer at the Department of Corrections, and, therefore, more credible.  Kimberly, nevertheless, reported the matter to the police, but no charges were filed.  After she reported the petitioner's conduct, she was harassed at school and received hundreds of pieces of "hate mail" at home.  The petitioner sued Kimberly for defamation.

Lisa P., the petitioner's niece, testified that she lived with the petitioner and Denise beginning when she was 8 years old.  Lisa testified that the petitioner began sexually assaulting her when she was 13 or 14 years old.  He abused her approximately every other day and told her not to tell anyone.  Another of the petitioner's nieces, Kelly B., initially told police that the petitioner had molested her. She also informed police that various family members had threatened her to keep her quiet.  When served with a subpoena to testify at trial, she informed police she would not cooperate. At trial, Kelly recanted her allegations of abuse.

The petitioner's sister, Natalie Pattison, testified that the petitioner's family put pressure on Lisa and B.P. when they started to come forward with allegations of abuse.  Natalie admitted she told Lisa that the abuse allegations caused her grandmother to have a heart attack and that the petitioner would be at risk if he went to prison because he had been a police officer.

Denise Pattison, the petitioner's ex-wife, testified that she never saw the petitioner behave inappropriately with B.P. or Lisa.

The petitioner was convicted by an Oakland County, Michigan jury of four counts of first-degree criminal sexual conduct and pandering. On February 12, 2008, he was sentenced to 40 to 60 years in prison for each of the criminal sexual conduct convictions, and one to 20 years in prison for the pandering conviction.

The petitioner filed a direct appeal in the Michigan Court of Appeals. He raised these claims: (i) the prosecutor committed misconduct by introducing hearsay and other improper evidence and making inflammatory remarks in her closing statement; (ii) trial counsel was ineffective by failing to object to the prosecutor's conduct and failing to move for a mistrial or otherwise object when at least four jurors observed the petitioner in shackles; and (iii) the trial court violated the principle of proportionality by sentencing the petitioner above the guidelines. The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Pattison*, No. 284652, 2009 WL 2605360 (Mich. Ct. App. Aug. 25, 2009). The Michigan Supreme Court denied leave to appeal. *People v. Pattison*, 485 Mich. 1102, 778 N.W.2d 231 (2010).

The petitioner then filed the pending habeas corpus petition. He raises these claims:

I. The prosecutor committed misconduct by repeatedly introducing hearsay and other improper evidence and by making inflammatory remarks in her closing statement.

II. Trial counsel failed to lodge objections to repeated prosecutorial misconduct. Counsel failed to object to hearsay and to irrelevant, prejudicial testimony. Counsel failed to seek an adequate remedy after jurors observed Mr. Pattison in chains.

III. The trial court exceeded the guidelines by 15 years for counts one through four. This departure violates the principle of proportionality.

-4-

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (*quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.  The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, 562 U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766,

773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737–39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493–94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594–95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766–67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398, (2011).

## A.

The petitioner raises eight claims of prosecutorial misconduct. The Michigan Court of Appeals accurately identified those claims as follows:

> [T]he prosecutor engaged in misconduct by 1) asking the first similar-acts witness, LP, irrelevant questions about how defendant's former wife, Denise Pattison, felt about defendant's relationship with another woman, SB, 2) reading from LP's preliminary examination transcript without a proper purpose, 3) explicitly asking LP to relate hearsay by asking if the victim ever confided in LP, 4) questioning another similar-acts witness, KB, by reading selected and incriminating portions of a police interview transcript to the jury, 5) interrogating KB about an irrelevant and highly inflammatory incident regarding the custody of her children, 6) eliciting hearsay testimony from defendant's sister, Natalie Pattison, about a telephone call to LP, 7) improperly eliciting hearsay by asking Natalie about what KB had told her, and 8) in closing argument improperly referring to other unnamed victims.

*Pattison*, 2009 WL 2605360 at *1.

Respondent argues that these claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, --- U.S.---, 132 S. Ct. 2148, 2153 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under AEDPA's hyper-deferential review standard, the relevant question is whether the Michigan Court of Appeals' decision denying the petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at ---, 131 S. Ct. at 786-87.

First, the petitioner argues that the prosecutor committed misconduct by asking L.P. questions about the petitioner's affair with a girlfriend named S.B. and asking how the petitioner's ex-wife, Denise Pattison, felt about the relationship. The petitioner argues that this testimony was wholly irrelevant to the charges against him and elicited only to attack the petitioner's character.

-8-

The Michigan Court of Appeals held that the testimony was properly elicited because it bore upon Denise's willingness to overlook the petitioner's inappropriate conduct, including his abuse of the victim, and her general credibility. *Pattison*, 2009 WL 2605360 at *1. Although the relationship between Denise's willingness to tolerate the petitioner's affair with S.B. and her credibility regarding B.P.'s allegations is somewhat attenuated, the standard of review is "very deferential" on claims regarding the admission of evidence in state court. *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007). The petitioner has not shown that the state courts' decision that this evidence was properly admitted "is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Because the court of appeals held that the evidence was properly elicited, the petitioner cannot show that the prosecutor acted improperly by asking the questions.

Second, the petitioner argues that the prosecutor improperly read into the record portions of Lisa P.'s preliminary examination testimony to establish how many times the petitioner sexually assaulted her. Lisa P. testified that she was the petitioner's niece and that she had been adopted by Denise because her biological mother, the petitioner's sister, could not care for her. She testified that she no longer lived with Denise or the petitioner because Denise physically abused her and the petitioner sexually assaulted her. The prosecutor asked Lisa P. over how long a period of time she was assaulted. She responded that it happened over a period of five years and it seemed as if she were being assaulted every day or every other day, but had some difficulty estimating the number of times she was assaulted. In response to this testimony, the prosecutor asked Lisa P. whether she remembered testifying at the preliminary examination that it seemed like she was assaulted over a hundred times. Lisa P. responded, "No, but I do now that you mentioned it." Tr., Jan. 10, 2008, at 60. The petitioner objects to the prosecutor's quoting Lisa P.'s preliminary examination testimony,

arguing that the prosecutor essentially testified for Lisa P. by doing so. The Michigan Court of Appeals held that the prosecutor's question reflected a good-faith effort to attempt to refresh L.P.'s memory in the face of her equivocal testimony. *Pattison*, 2009 WL 2605360 at *1. This Court agrees that the prosecutor's conduct in this instance was proper and certainly did not infect the trial with unfairness.

Third, the petitioner argues that the prosecutor improperly attempted to elicit hearsay testimony from Lisa P, pointing to the following exchange:

> Prosecutor:    Did [B.] ever confide in you and tell you that anything was going on with her?
>
> Lisa P.         No.
>
> Prosecutor:    Were you aware at some point that [B.] reported to Protective Services or to a therapist or someone that she was — that she had been molested as a child by Bill?
>
> Lisa P.         I don't remember.

Tr., Jan. 10, 2008, at 64.

The Michigan Court of Appeals held that the prosecutor's questions were not an improper attempt to elicit hearsay because she did not ask for the substance of any conversations. The Court agrees with this assessment. The prosecutor's questions were not an attempt to, nor did they, elicit any hearsay testimony.

Fourth, the petitioner argues that the prosecutor improperly questioned a similar-acts witness, Kelly B., about her out-of-court statement to police in which she admitted that the petitioner had sexually assaulted her. At trial, she claimed that she lied when she told police that she had been assaulted. The petitioner argues that the out-of-court statement should not have been used for impeachment purposes because it was elicited *before* Kelly B. gave inconsistent testimony at trial.

-10-

Contrary to the petitioner's assertion, the prosecutor introduced Kelly B.'s out-of-court statement to police *after* she testified in an inconsistent manner. The prosecutor's use of the statement to impeach Kelly B.'s credibility was appropriate and, as the Michigan Court of Appeals held, done only after a proper foundation was established. There was no misconduct in the prosecutor's use of the statement. Similarly, the petitioner's sixth claim that the prosecutor committed misconduct when she asked Natalie whether Natalie told Lisa P. or the victim that she believed their allegations is meritless. Natalie testified at trial that she supported the petitioner. The prosecutor then properly used her prior inconsistent statement that she believed Lisa P.'s allegations to attack her credibility. The Michigan Court of Appeals holding that this was proper impeachment is well within the range of reasonable conclusions allowed by AEDPA. *Parker*, 132 S. Ct. at 2155.

Fifth, the petitioner argues that the prosecutor improperly used extrinsic evidence — a police report — to impeach Kelly B. about a collateral matter, that is, the reason she lost custody of her children. The Michigan Court of Appeals held that impeachment on a collateral matter through the use of extrinsic evidence was improper under Mich. R. Evid. 608(b), but that the petitioner suffered no prejudice from the error. There is "no Supreme Court authority . . . holding that a prosecutor's questions simply calling for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a Due Process violation." *Wade v. White*, 120 F. App'x 591, 594 (6th Cir. 2005). In this case, the use of improper impeachment evidence in no way implicated the petitioner's right to a fair trial. The reference to the extrinsic evidence was brief and did not bear upon the petitioner's guilt or innocence. Habeas relief is denied on this claim.

Next, the petitioner argues that the prosecutor improperly invited hearsay testimony when she asked Natalie to relate what Kelly B. told her during a phone conversation. The Michigan Court

of Appeals held that this was not hearsay because it was offered to demonstrate the effect on the

listener. *Pattison*, 2009 WL 2605360 at *3. Federal habeas courts "'must defer to a state court's

interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel*

*v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.

1988)).  The petitioner has offered no valid argument why the Court should disturb the state court's

finding on this evidentiary issue.  It follows, therefore, that the alleged evidentiary error does not

amount to prosecutorial misconduct.

Finally, the petitioner argues that the prosecutor improperly alluded to "other victims" in her

closing argument.  The petitioner objects to the following:

> The defendant here believes that the best defense is an offensive.  He's coming
> straight at you.  You cross him, you take away that control from him and he's coming
> after you.  He's going to sue you.  He's going to take your child away from you.
> He's going to estrange you from the rest of your family.  He's going to guilt you by
> saying I'll hang myself and grandma will have a heart attack?  When does it end?
> How many more people have to come forward and talk about what this man did to
> their lives?

Tr., Jan. 14, 2008, at 91.

The petitioner argues that by making this argument, the prosecutor was referring

inappropriately to additional, unknown sexual assault victims.  The Michigan Court of Appeals

disagreed.  The state court held that, viewed in the context of the entire closing argument, the

prosecutor's argument was simply a summary of the testimony adduced at trial and reasonable

inferences reached from that testimony.  The testimony presented by the prosecution showed that

the petitioner went to great and extreme means, including cajoling and threatening, to attempt to

quiet the allegations of abuse.  "[P]rosecutors can argue the record, highlight the inconsistencies or

inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates*

-12-

*v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).  "There is nothing improper about posing rhetorical questions within the broad scope of a closing argument."  *United States v. Green*, 305 F.3d 422, 430 (6th Cir. 2002).  The prosecutor's reference to other people coming forward was not improper.  It was simply a rhetorical device used to argue that the State had amply satisfied its burden of proof.

B.

In his second habeas claim, the petitioner argues that he received ineffective assistance of counsel.  He argues that his attorney's performance was deficient when he failed to object to the numerous instances of alleged prosecutorial misconduct discussed above, failed to object to testimony that the petitioner was fired by the Michigan Department of Corrections for sexual misconduct against inmates, and failed to request a remedy after jurors saw deputies escort the petitioner in chains.

To establish that he received ineffective assistance of counsel, the petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  That "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.*

-13-

at 689.  Habeas relief may be granted only if the state court's decision unreasonably applied the standard for evaluating ineffective assistance of counsel claims established by *Strickland*.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold."  *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that eight of the nine prosecutorial misconduct claims raised by the petitioner were meritless.  This Court has held that the state court's conclusion regarding those prosecutorial misconduct claims was not contrary to or an unreasonable application of Supreme Court precedent.  Therefore, counsel cannot be deemed ineffective for failing to object to arguably proper conduct.  With respect to the remaining prosecutorial misconduct claim, the Michigan Court of Appeals held that the prosecutor should not have used extrinsic evidence to impeach Kelly B. on a collateral matter, but that the petitioner was not prejudiced by that evidence. The Michigan Court of Appeals further held that defense counsel was not ineffective by failing to object because there was no reasonable probability that an objection would have altered the trial's outcome.  The state court's finding was a reasonable application of *Strickland*.

The petitioner also argues that counsel was ineffective by failing to object to testimony from the victim that the petitioner was fired from his prison job for criminal sexual conduct.  The Michigan Court of Appeals held that the petitioner failed to overcome the presumption that defense counsel's failure to object was sound trial strategy.  The state court reasoned that defense counsel may have reasonably concluded it was better not to draw the jury's attention to that testimony, which was not expounded upon and was mentioned only briefly.  Further, the state court found no

-14-

reasonable probability that the result of the proceeding would have been different had counsel objected. *Pattison*, 2009 WL 2605360 at * 4.

This Court cannot quarrel with the state court's decision on that score. Counsel had to make a quick decision whether objecting to the victim's reference to the petitioner's termination was worthy of objection or whether it would simply spotlight that testimony. Although a strategic decision may be the basis for an ineffective assistance of counsel claim if it is "so ill-chosen that it permeates the entire trial with obvious unfairness," *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001), the decision not to object in this case clearly did not permeate the trial with unfairness. The Michigan Court of Appeals's conclusion that counsel's decision not to object was reasonable trial strategy and that the failure to object did not prejudice the defense is a reasonable application of *Strickland*.

Finally, the petitioner argues that counsel was ineffective by failing to request a remedy after advising the trial court that the petitioner believed jurors saw deputies place him in chains at the end of the trial day. The trial court dismissed the concern because the chambers staff does not permit jurors to exit the jury room at the end of the day until a defendant has been removed from the area. The Michigan Court of Appeals denied the claim on this basis. The petitioner has presented no evidence to call into question the state court's factual finding. Therefore, counsel was not ineffective for failing to seek a remedy where no breach occurred.

C.

-15-

Finally, the petitioner argues that his 40-year minimum sentence violates the principle of proportionality.

There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 2686 (1991). However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S. Ct. at 2705 (Kennedy, J. concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303, 103 S. Ct. 3001, 3008, 3016 (1983)). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374, 102 S. Ct. 703, 705 (1982) ("[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare.") (internal quotations omitted). The petitioner's sentences did not exceed the statutory maximum for his offenses. The sentencing court exceeded the state sentencing guidelines because the petitioner used his status as a corrections officer and reserve police officer to instill fear in his daughter, had not shown himself amenable to treatment, and presented a continuing threat to young women and girls. The petitioner's sentences were not grossly disproportionate to the crime or the offender. Accordingly, he fails to prove an Eighth Amendment violation.

III.

For the reasons stated, the Court concludes that the petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

-16-

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 3, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on October 3, 2013.

s/Shawntel Jackson
SHAWNTEL JACKSON

---

-17-